IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| David Lewerentz, <br><br> Plaintiff, <br><br> v. <br><br> The 1411 State Parkway Condominium Association, <br><br> Defendant. | Case No. 23-cv-1635 <br><br> Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Lewerentz brings this action for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227(b), and invasion of privacy against his former employer, Defendant The 1411 State Parkway Condominium Association. Defendant has moved to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (Dkt. 16). For the reasons discussed below, Defendant's motion to dismiss is granted.

## BACKGROUND

According to the Complaint, Plaintiff worked as the chief building engineer at two condominium buildings governed by Defendant in Chicago, Illinois. (Compl. ¶ 27, Dkt. 1). During his employment, call buttons in the elevators in each building were programmed to dial Plaintiff's cell phone when pressed. (*Id*. at ¶ 28). Plaintiff routinely fielded these calls from elevator occupants and took appropriate action in response. (*Id.* at ¶ 35). Just before Plaintiff's employment ended in September 2018, he asked Defendant's new property management company to change the telephone number associated with the elevator call buttons so that his cell phone would no longer be called. (*Id.* at ¶¶ 36, 40-42). Despite that request, Plaintiff continued to receive calls on his cell phone when the button was pressed. (*Id.* at ¶¶ 43-44). Although Plaintiff complained to Defendant,

the property management company, and the new building engineer about these unwanted calls and asked them to remove his number, the calls continued. (*Id.* at ¶¶ 45-51).

Plaintiff alleges he received dozens of calls from September 2018 until March 2023, when this lawsuit was filed. (*Id.* at ¶ 33). Calls would occur at all hours of the day and night, and more often than not, Plaintiff believes, resulted from people accidentally bumping the button or curious children pressing the button. (*Id.* at ¶ 52). When Plaintiff answered, he would hear an artificial voice notifying him that the button had been pressed and prompting him to press a number to speak with the elevator's occupants. (*Id.* at ¶ 30). Plaintiff could tell it was an artificial voice because of his familiarity with normal human intonation and his inability to engage the voice in any reciprocal communication. (*Id*. at ¶ 34).

Prior to filing suit, Plaintiff sent letters to Defendant and the property management company requesting that the calls cease. (*Id*. at ¶ 55). He alleges that in response, Defendant placed additional calls to his cell phone using the elevator call buttons and mocked him when he answered. (*Id*. at ¶ 56). Plaintiff claims the repeated calls caused him to suffer harm including, lost time responding to them, invasion of privacy, stress, and nuisance. (*Id.* at ¶ 63). He states these calls were not made for emergency purposes; rather, they were "incessant intrusions [sic] were highly offensive to a reasonable person, unwarranted, and unjustified." (*Id*. at ¶¶ 67, 74).

## **LEGAL STANDARD**

Rule 12(b)(6) permits a party to move for dismissal based on the opposing party's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In determining whether a complaint states a claim under Rule 12(b)(6), the Court must accept all non-conclusory factual allegations as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)). In addition, the Court must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 626 (7th Cir. 2022). Applying these principles, a complaint will survive a motion to dismiss if it "states a plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 127 S.Ct. at 1965). To state a plausible claim for relief, a complaint must "permit the court to infer more than the mere possibility of misconduct[.]" *Iqbal*, 129 S. Ct. at 1950. Plausible does not mean probable, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949. The movant bears the ultimate burden of showing that dismissal is warranted. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## DISCUSSION

### I.  Count I: Violation of the Telephone Consumer Protection Act

Congress passed the TCPA in 1991 to address "the proliferation of intrusive, nuisance calls to consumers and businesses alike from telemarketers." *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163, 1167 (2021) (internal quotation marks and citation omitted). The "advances in automated technology made it feasible for companies to execute large-scale telemarketing campaigns" and "dramatically increase[e] customer contacts" through the development of robocall technology that used "artificial or prerecorded voices, obviating the need for live human callers altogether." *Id.* Such "automated or prerecorded telephone calls . . . were rightly regarded by recipients as an invasion of privacy." *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740, 745 (2012) (internal quotation marks and citation omitted).

Here, Plaintiff contends that Defendant's refusal to reprogram the building elevators to prevent further calls to his cell phone with an artificial voice violates the TCPA.[1] Specifically, he points to the prohibition against making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using . . . an artificial or prerecorded voice. . . to any telephone number assigned to a . . . cellular telephone service. . . ." 47 U.S.C. § 227(b)(1)(A)(iii). To state a TCPA claim, Plaintiff must plausibly allege that Defendant called his cell phone using an artificial or prerecorded voice for non-emergency purposes and without his express consent. *Hanley v. Green Tree Servicing, LLC*, 934 F.Supp.2d 977, 982 (N.D. Ill. 2013). That determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

Defendant challenges the Complaint on several grounds that are not persuasive. First, it contends that Plaintiff does not sufficiently identify when or how many calls he received or when he rescinded his consent. But Plaintiff alleges he received dozens of calls between September 2018—when his employment ended and he initially withdrew his consent to further calls from Defendant—and March 2023—when he initiated this lawsuit. Factual specificity as to the exact date and time of each call from Defendant or each instance where Plaintiff expressed to Defendant a clear revocation of his prior consent to these calls is not necessary. Plaintiff has pleaded enough facts to put Defendant on notice of his claims as required under Fed. R. Civ. P. 8. *See Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551 at *2 (N.D. Ill. Dec. 18, 2012) (finding that where the plaintiff provided basic details such as call dates and his full name, it would not be unduly

---

[1] Plaintiff generally asserted in the Complaint that Defendant violated § 227(b) of the TCPA, which prohibits certain calls to residential phone numbers and cell phones using an automated telephone dialing system (ATDS) or an artificial or prerecorded voice. (Compl. ¶¶ 2, 11). After Defendant moved to dismiss that claim on multiple grounds, Plaintiff clarified that his claim for "prerecorded voice calls placed by [Defendant] to [his] cellular telephone after his employment ended" arises under 47 U.S.C. § 227(b)(1)(A)(iii). (Pl. Resp. at 6, Dkt. 24).

burdensome for the defendant to check its database to determine if and when calls were made). In fact, the TCPA makes a *single* call to a cell phone actionable, which Plaintiff certainly satisfies here.

Second, Defendant argues that the allegations about use of a pre-recorded voice are inadequate. However, Plaintiff need only "describe the robotic sound of the voice on the line, the lack of human response when he attempted to have a conversation with the 'person' calling him, the generic content of the message he received, or anything else about the circumstances of a call or message contributing to his belief it was pre-recorded." *Id*. at *3. Because the Complaint includes detail about the lack of human intonation or ability to engage, the allegations pass muster.

Third, Defendant insists these calls were made for an emergency purpose and are thus exempted under the TCPA. That argument fails for multiple reasons. Plaintiff pleads the opposite, namely the calls were *not* made for an emergency purpose, and the Court must take his allegation as true when analyzing a Rule 12(b)(6) motion. Furthermore, Plaintiff is correct that the statutory exemption is an affirmative defense for which Defendant will bear the burden of proof; thus, it would be inappropriate for the Court to dismiss on that basis at this juncture of the case. *Watts v. Emergency Twenty Four, Inc.*, No. 20 C 1820, 2021 WL 2529613, at *6, n.1 (N.D. Ill. June 21, 2021). More importantly, in its reply brief, Defendant makes no attempt to distinguish cases cited by Plaintiff holding that "the emergency purposes exception to the TCPA does not apply to calls made after [Plaintiff] told [Defendant] to stop calling him." *Coleman v. Rite Aid of Georgia, Inc.*, 284 F.Supp.3d 1343, 1347 (N.D. Ga. 2018). *Accord Watts*, 2021 WL 2529613 at *6, n.2.

Nevertheless, the Court agrees with Defendant that Plaintiff has not stated an actionable claim under the TCPA. It is not enough to merely parrot the statutory language or to provide a formulaic recitation of the elements of a TCPA claim. *See Ananthapadmanabhan v. BSI Fin. Servs.*,

*Inc.*, No. 15 C 5412, 2015 WL 8780579 at *4 (N.D. Ill. Dec. 15, 2015). To the contrary, "[i]t is by now well established that a plaintiff must do better than putting a few words on paper, that, in the hands of an imaginative reader, *might* suggest that something has happened to [him] that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). "A claim has facial plausibility when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Hanley*, 934 F.Supp. 2d at 981 (citing *Iqbal*, 129 S.Ct. at 1949). Pleading facts that are merely consistent with a defendant's liability, however, "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotation marks and citation omitted).

The TCPA does makes it unlawful for any person to call a cell phone without consent using an artificial or prerecorded voice. But in an age where individuals acting innocently and telemarketers acting illegally can each use AI technology to generate calls with artificial or prerecorded voices, the overly simplistic interpretation of the TCPA that Plaintiff pushes here paints with too broad of a brush. Recently, the Federal Communications Commission (FCC) issued a declaratory ruling affirming "the TCPA's restrictions on the use of 'artificial or prerecorded' voice encompass current [artificial intelligence] technologies that resemble human voices and/or generate call content using a prerecorded voice." *In the Matter of Implications of Artificial Intelligence Technologies on Protecting Consumers from Unwanted Robocalls and Robotexts*, CG Docket No. 23-362, Declaratory Ruling, FCC 24-17 (rel. Feb. 8, 2024). A few weeks ago, the FCC released a notice of proposed rulemaking and notice of inquiry seeking public comment on ways to address potential harms associated with AI-initiated robocalls while supporting beneficial uses of the technology that improve telephone network access for consumers with disabilities. *See* https://www.fcc.gov/document/fcc-proposes-first-ai-generated-robocall-robotext-rules-0 (last

visited on 9/3/2024). The point is that not every call made without consent to a cell phone using an artificial or prerecorded voice runs afoul of the TCPA.

To be clear, Defendant should have immediately removed Plaintiff's number from the call button once he was no longer its employee. After all, the purpose of an elevator call button that connects occupants directly with the chief building engineer is to assist them with obtaining relief. Assuming Plaintiff's allegations are true, it should not have taken over four years and a lawsuit for Defendant to finally fix this. Still, nothing about the scenario described by Plaintiff here seems to implicate the purpose or intent of the TCPA, which is to curb the "unrestricted telemarketing" that "can be an intrusive invasion of privacy." *Mims*, 132 S. Ct. at 745.

At best, the Court construes the Complaint as alleging a two-party dispute involving a Defendant who targeted Plaintiff with unwanted phone calls. Plaintiff's only hook under the TCPA is that Defendant used a prerecorded message to announce in an artificial voice that the call button had been pressed and Plaintiff should in turn press a button to speak with the person who "called" him. While it is true that the TCPA does not define the terms "artificial" or "prerecorded voice," it would be a stretch to find that these facts describe the type of telephone harassment that Congress sought to remedy.

In *Gadelhak v. AT&T Servs., Inc.*, the Seventh Circuit expressed similar reservations about adopting an interpretation of the TCPA that would have "far-reaching consequences" on everyday conduct and people. 950 F.3d 458, 467 (7th Cir. 2020). There, the court rejected a reading of the statute that "would create liability for every text message sent from an iPhone" because it was "a sweeping restriction on private consumer conduct that is inconsistent with the statute's narrower focus." *Id. Gadelhak* observed that each such call or text message "sent from an iPhone without

prior express consent of the recipient could subject the sender to a $500 fine[,]" and concluded that "[c]onsidering the [TCPA] as a whole, that result makes little sense." *Id.*

Likewise, the conduct Plaintiff describes here is more akin to intrusive acts by a private citizen that may implicate state tort privacy rights than a telemarketer engaging in activities that violate the TCPA. Because his theory of relief is possible but not plausible, the TCPA claim must be dismissed.

## II. <u>Count II – Invasion of Privacy</u>

With the dismissal of Plaintiff's TCPA claim which provided the basis for federal question jurisdiction, the Court would decline to exercise supplemental jurisdiction over the related state tort claim. However, even if Plaintiff is able to re-plead a viable TCPA claim, his invasion of privacy claim also falls short.

Intrusion upon seclusion is an intentional privacy tort recognized in Illinois. *Lawlor v. North American Corp.*, 2012 IL 112530, 983 N.E. 2d 414. "Repeated, unauthorized telephone calls can give rise to" such a claim. *Messina v. Green Tree Servicing, LLC*, 210 F.Supp.3d 992, 1010 (N.D. Ill. 2016). To prevail on his claim, Plaintiff must prove "(1) an unauthorized intrusion into seclusion; (2) an intrusive would be highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused the plaintiff[] anguish and suffering." *Id.* at 1008.

In addition to alleging acts that satisfy those elements, like all intentional torts, Plaintiff must allege actual injury. "Under Illinois law, a plaintiff must prove actual injury in the form of, for example, medical care, an inability to sleep or work, or a loss of reputation and integrity in the community in order to recover damages for torts such as intrusion upon seclusion. *Injury is not presumed.*" *Spiegel v. McClintic*, 916 F.3d 611, 619 (7th Cir. 2019) (citing *Schmidt v. Ameritech Ill.*, 329 Ill.App.3d 1020, 768 N.E.2d 303, 316 (2002)). A plaintiff must show that "the intrusion

into her privacy caused 'anguish and suffering'." *McGreal v. AT & T Corp.*, 892 F. Supp. 2d 996, 1015 (N.D. Ill. 2012) (quoting *Burns v. Masterbrand Cabinets, Inc.*, 369 Ill.App.3d 1006, 874 N.E.2d 72, 77 (4th Dist. 2007) (collecting cases).

Here, Plaintiff has failed to plead specific facts demonstrating an actual injury. Instead, he offers conclusory statements about harm suffered, such as lost time addressing calls, stress, and nuisance. (Compl. ¶ 63). That is not enough. *Cf. Minter v. AAA Cook Cnty. Consolidation, Inc.*, No. 02 C 8698, 2004 WL 1630781, at *7 (N.D. Ill. July 19, 2004) (Plaintiff's statement that she felt "angry, humiliated, frustrated and embarrassed" was not sufficient evidence to defeat summary judgment on an intrusion upon seclusion claim). Thus, his state law invasion of privacy tort claim must be dismissed.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss Plaintiff's complaint (Dkt. 16) is granted. As requested, Plaintiff is granted leave to file an amended complaint consistent with this ruling by 9/30/24.

**DATED**: September 5, 2024          **ENTERED**:

*LaShonda A. Hunt*
LaShonda A. Hunt
United States District Judge